GOULD, Circuit Judge,
dissenting:
I take a different view and would affirm the district court for three reasons.
First, Federal Rule of Evidence 104(a) literally permits a district court to perform a threshold review of the admissibility of *968 evidence. Even if Rule 104(a) is limited to the “preliminary requirements or conditions that must be proved before a particular rule of evidence may be applied,” United States v. Brewer, 947 F.2d 404, 409 (9th Cir.1991), that does not prevent the court from excluding illegitimate evidence when excluding such evidence is the very reason rules of evidence exist. I have no problem reaching the firm conclusion that illegitimate evidence may permissibly be held to be inadmissible due to its inaccurate nature. We should make that our prece-dential point, rather than the approach favored by the majority.
I illustrate with a thought experiment or hypothetical. Let’s say that an organized-crime czar is charged in a serious case and wants to present “exculpatory” evidence. But the prosecution has independent evidence that the defense evidence is as phony as a $3 bill. It might be fraudulently obtained (such as the legitimate document here that was procured by fraudulent means). Or it might be the product of extortion (such as through a threat like “I will kill your children if you don’t give me an alibi”). Or it might be the product of bribery (such as a promise to pay a large sum for favorable evidence). In each case, the majority’s rule would appear to require the phony evidence to be admitted before the jury, while merely letting the prosecution present responsive evidence to the jury showing that it was procured by fraud, extortion, or bribery. That would require mini-trials within the trial, would be potentially confusing to a jury, and is not literally required by Rule 104.
The majority agrees that the court can condition relevance on validity. But it concludes that in making “a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition,” Fed.R.Evid. 104(b) advisory committee’s note, a court may not consider the underlying substance and process that led to the issuance of a document because doing so would amount to an improper credibility determination. Applying this rationale in the present case, the majority concludes that “the district court erroneously weighed the credibility of the government’s witnesses against the credibility of the official state document.” But the existence of the document does not at all bear on the question of whether it was procured by fraud. And the district court cannot be said to have made a credibility determination when Evans presented no evidence at the hearing to support the document’s integrity.. Adopting the rule of the majority permits a party’s old lies to insulate new ones from challenge outside the jury’s presence.
Here are the facts: To gain the delayed birth certificate, Evans offered an affidavit and testimony asserting that he was born in Idaho and was a former member of the U.S. Marine Corps. He said under oath that he was “active in the Vietnam [W]ar, from 1969 through 1975” and had twelve years of combat duty where he earned a purple heart. He said that when he came back to the United States, he “donated [his] next eight years of service [in the Marine Corps] for free”, until he retired. On this evidence, the Idaho judge granted the delayed birth certificate in the non-adversarial state proceeding and thanked Evans for his military service.
In the federal criminal proceeding, the district court excluded the Idaho birth certificate. It reached this correct decision after hearing extensive evidence that Evans was not a U.S. citizen and never served in the military, let alone in a war zone.[1] Based on this evidence and without *969 any evidence presented by. Evans, the court fairly concluded:
While neither party questions the validity of the Idaho birth certificate on its face, the Government has unequivocally shown that the Idaho birth certificate is substantively fraudulent and that it was obtained through fraud of the Defendant. The [c]ourt finds that all three of the Government’s witnesses were credible and that there is no support in the record that would allow a reasonable person to determine that the Defendant’s Idaho birth certificate is substantively genuin'e:
The majority argues that the court im-permissibly made a credibility determination, but as I have explained, this principle should not be applied when all the evidence was on the Government’s side and Evans had no witnesses testify at the evidentiary hearing. The district court’s rationale quoted above is equivalent to saying that no reasonable jury could determine that the birth certificate was not tainted by fraud. I conclude that the district court made a correct and discerning judgment. There is nothing on the side of nonfraud here, and the district court’s decision excluding the- evidence was correct.
“Fraud” is “an instance or act of trickery or deceit especially] when involving misrepresentation.” Webster’s Third New International Dictionary 904 (3d ed.1993). To tell a lie is to “make an untrue statement with an intent to deceive” or to “create a false or misleading impression.” Id. at 1305. Lying is a form a fraud. And to determine whether fraud exists, substahce and process must be examined. Under the majority rule, the district court could not perform such an examinátion and evidence procured by fraud would be admissible, leaving it to the jury to sort things out. To my thinking, there is no evidence error at all in excluding fraudulently obtained evidence. I would conclude that Federal Rule of Evidence 104(a) lets the court .preliminarily review whether a state document in the form of a belated birth certificate was procured by fraud. That is one reason to affirm the district court.
Second, even if Rule 104(a) should be limited as stated by the majority, Federal Rule of Evidence 403, relied upon by the district court in its Rule 104 decision, gives the district court broad power to exclude evidence if its probative value is substantially outweighed by a danger of “unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.” [2] All the valid evidence presented to the state in the non-adversarial proceed *970 ing for the birth certificate could have been presented in Evans’s criminal trial. I would have thought, that introducing a fraudulent document would be wasting the jury’s time and confusing the issues. It was, reasonable for the district court to exclude the delayed birth certificate under Rule 403. See Old Chief v. United States, 519 U.S. 172, 184-85, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (performing a Rule 403 analysis requires the court to consider the probative value and prejudice associated with the admission of evidence alongside the probative value and prejudice associated with similar evidentiary alternatives). And our case law confirms that excluding an evidentiary exhibit under Rule 403 is permissible where the relevance of the document is predicated on a disputed factual hypothesis. Baker v. Delta Air Lines, Inc., 6 F.3d 632, 643 (9th Cir.1993). The standard for abuse of discretion under United States v. Hinkson, 585 F.3d 1247 (9th Cir.2009) (en banc), prevents us from reversing an evidence ruling if it is not “illogical, implausible, or without support in inferences that may be drawn from the facts in the record.” See United States v. Redlightning, 624 F.3d 1090, 1110 (9th Cir. 2010) (citing Hinkson, 585 F.3d at 1261). Here, the district court’s decision is logical and is supported by evidence that the certificate was gained by fraudulent documents and false testimony. Undue delay was likely to result from the certificate’s admission. There was no abuse of discretion in applying Federal Rule of Evidence 403. That is a second reason to affirm the district court.
Third, even if the district court abused its broad discretion on evidence rulings despite the sound grounds for the fraudulent birth certificate’s exclusion, I would not elevate this to the level of constitutional error and instead would conclude that any error was harmless.[3] See United States v. Pridgen, 518 F.3d 87, 91-92 (1st Cir.2008) (stating the harmless-error standard). Evans cannot claim that exclusion of the delayed birth certificate blocked his defense because the court let him give testimony and offer valid documents supporting his claim of citizenship. See United States v. Stever, 603 F.3d 747, 755-57 (9th Cir.2010) (holding that there was constitutional error where “the sole evidence” on a major issue was erroneously excluded); see also United States v. Pineda-Doval, 614 F.3d 1019, 1032-33 (9th Cir. 2010) (holding that there was constitutional error where a total exclusion of evidence wholly “denied the defendant the only argument that he had”). The ruling, even if assumed to be incorrect, did not create fundamental unfairness and a resulting due-process violation in the criminal trial. See United States v. Ramirez, 714 F.3d 1134, 1139 (9th Cir.2013) (holding that there was non-constitutional error). Because the error was not constitutional, reversal is improper so long as “it is more probable than not that the error did not materially affect the verdict.” See United States v. Wiggan, 700 F.3d 1204, 1215 (9th Cir.2012) (quoting Boyd v. City & Cnty. of S.F., 576 F.3d 938, 949 (9th Cir.2009)). *971 Here Evans chose not to present much of the evidence offered in state court to obtain the delayed birth certificate. And the Government presented overwhelming evidence, including several fingerprint matches and photographic matches to an active immigration file and testimony from Evans’s sister identifying him as Roman Ceniceros-Mora who was born in Mexico. Evans’s testimony also revealed that he had previously committed birth-certificate fraud, that he had physical injuries consistent with those of Ceniceros-Mora, and that he had previously signed statements using Ceniceros-Mora’s name. The arresting officer also stated that after Evans was given his Miranda warnings, he admitted to having been deported before and said, “[T]ime will tell; I will be back; I will be back.” The challenged ruling, if error, was harmless on all the evidence.[4] That is a third reason to affirm the district court.
Hence I respectfully dissent and would affirm the district court.

. The official military historian testified that she could not verify Evans's service at all and *969 “found nothing” even after searching casualty cards of those who were injured, the master locator containing the names of all marines, the pay entry base containing the dates that marines entered the service, and the lineal list for commissioned officers. She found no service number for Evans and stated that documents provided by Evans to support his claims of military service were not official documents and were instead “homemade” and "look like somebody made it for them— created it for themselves.’’ Pictures of Evans in military uniform did not observe the dress code and the pictures reflected a rank of Staff Sergeant, even though Evans claimed to be an officer. The historian also stated that Evans could not have been "retired” from the Marine Corps because he did not allege a sufficient period of service for retirement. And finally, she said that Evans could not have served twelve years of active duty in Vietnam through 1975 because (1) “Marine Corps participation drew down and ended as a large scale operation” in 1971 and (2) the “[tjypical tour for a Vietnam Marine was 13 months,” so twelve years of service does not seem possible. Why should a judge require the jury to wade through all this?

. Unlike the majority, I read the district court’s order as relying on Rule 104(a) and Rule 403 conjunctively instead of independently, in part because the district court char *970 acterized its own actions as being similar to when a court determines whether proffered scientific expert testimony or co-conspirator statements are admissible under the rules of evidence. Because of this, the majority's discussion of Rule 104(a) as if standing alone is unnecessary.

. The panel majority also should not have reached the question of whether the exclusion of the birth certificate violated Evans’s right to present a defense under the Fifth Amendment because Evans did not brief that argument before the district court, and the court did not address that issue in the challenged order. See Trigueros v. Adams, 658 F.3d 983, 988 (9th Cir.2011) ("Ordinarily, arguments not raised before the district court are waived on appeal.”).

. Even if I assume there was constitutional error, I would conclude that it was harmless beyond a reasonable doubt under the standard of Chapman v. California, 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).